UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHRISTOPHER J BOWDEN,

    Plaintiff,

v.                                            Case No.:   2:22-cv-769-SPC-NPM

MOSES FROST, EUCLIDES
RAMOS, ALVIN CASSNER and
KATHLEEN LARSON,

    Defendants.
_____/

## OPINION AND ORDER

Before the Court are Defendants' Motion to Dismiss Second [sic] Amended Complaint[1] (Doc. 53) and Plaintiff Christopher Bowden's handwritten response[2] (Doc. 56).

## Background

Bowden is a prisoner of the Florida Department of Corrections (FDOC), and he sues four FDOC officials under 42 U.S.C. § 1983. The Court recounts the factual background as pled in Bowden's Amended Complaint, which it must take as true to decide whether the complaint states a plausible claim. *See Chandler v. Sec'y Fla. Dep't of Transp.*, 695 F.3d 1194, 1198-99 (11th Cir. 2012).

---

[1] Bowden has amended his complaint just once, so there is no second amended complaint in this case.
[2] The Court carefully reviewed Bowden's response, but portions of it are illegible.

On August 31, 2022, Captain Moses Frost looked into Bowden's cell and told Sergeant Alvin Cassner, "Search his cell. He's got too much property." ([Doc. 52 at 3](#)). About ten minutes later, Officer Euclides Ramos appeared and told Bowden to submit to hand restraints because he was being placed on property restriction. Bowden was using the toilet at the time, so he did not immediately comply. About 45 minutes later, Lieutenant Kathleen Larson came to Bowden's cell, and Bowden submitted to hand restraints so his cell could be searched. Larson escorted Bowden to the showers while Ramos and Cassner began removing items from Bowden's cell. Larson said, "Bowden, I don't know what you and Frost got going on. All I know is I was told to come down here." (*Id.* at 3).

Cassner and Ramos destroyed some of Bowden's property. Bowden demanded that Larson stop them, she ignored Bowden, and Bowden berated her. Bowden then submitted to a strip search and a spit-hood before returning to his cell.

Cassner and Ramos discovered no contraband in Bowden's cell, and Bowden did not receive a disciplinary report or other written notice of a rule violation. But still, Bowden was placed on property restriction for the next 72 hours—he slept on the concrete floor and was not allowed hygiene items. Bowden was also placed on management meal for seven days, and he claims he was deprived of food during that period. Ramos returned Bowden's

2

damaged and destroyed property on September 4, 2022. Bowden refused to accept the property and requested that Ramos summon a supervisor to photograph it. Ramos refused and left, and Bowden has not seen the property since.

Bowden claims the property restriction and lack of adequate food was cruel and unusual punishment under the Eighth Amendment, and that he suffered sleeplessness, weight loss, emotional harm, anxiety, stress, and humiliation as a result. Bowden asserts a due-process claim because the defendants deprived him of property and food without first writing a disciplinary report. Bowden's original complaint also included a First Amendment retaliation claim, but he abandoned that claim in his Amended Complaint.

**Legal Standard**

When considering a motion to dismiss under Rule 12(b)(6), courts must accept all factual allegations in the complaint as true and view them in a light most favorable to the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The preferential standard of review, however, does not let all pleadings adorned with facts survive to the next stage of litigation. The Supreme Court has been clear on this point—a district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when

3

a court can draw a reasonable inference, based on facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)). And a plaintiff must allege more than labels and conclusions amounting to a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555.

Bowden files his Complaint under 42 U.S.C. § 1983. To state a § 1983 claim, a plaintiff must allege that (1) the defendant deprived him of a right secured under the Constitution or federal law, and (2) the deprivation occurred under color of state law. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (citing *Arrington v. Cobb Cty.*, 139 F.3d 865, 872 (11th Cir. 1998)). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1059 (11th Cir. 2001).

**Discussion**

Defendants seek dismissal of Bowden's Amended Complaint for failure to exhaust administrative remedies and failure to state a claim. The Court will first review the law and facts relevant to exhaustion. Then, the Court will examine Bowden's claims to determine whether they are exhausted and sufficiently pled.

4

**A. The law governing exhaustion**

Under the Prison Litigation Reform Act (PLRA), before a prisoner may bring a claim challenging the conditions of his confinement, he must exhaust available administrative remedies. 42 U.S.C. § 1997e. The purpose of administrative exhaustion "is to put the administrative authority on notice of all issues in contention and to allow the authority an opportunity to investigate those issues." *Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004) (cleaned up). The PLRA requires "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

The Eleventh Circuit has established a two-step process for deciding a motion to dismiss for failure to exhaust administrative remedies:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed…
>
> If the complaint is not subject to dismissal at the first step, where plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies. Once the court makes findings on the disputed issues of fact, it then decides whether under those

5

findings the prisoner has exhausted his available administrative remedies.

*Turner v. Burnside*, 541 F.3d 1077, 1082-83 (11th Cir. 2008).

The Florida legislature delegated the establishment of administrative remedies for aggrieved inmates to the FDOC. *Chandler*, 379 F.3d at 1287. The FDOC created a three-step grievance process. To exhaust it, a prisoner must (1) file an informal grievance to the responsible staff member; (2) file a formal grievance with the warden's office; and (3) appeal the formal grievance to the Secretary of the FDOC. *Id.* at 1288.

### B. Bowden's grievances

The relevant facts are not in dispute, but the parties interpret and characterized them differently. Bowden submitted six informal grievances, and five of them are attached as exhibits to his Amended Complaint. FDOC officials returned all six grievances without processing. Defendants argue the grievances did not comply with FDOC rules, while Bowden claims the reasons given for the returns were pretextual. The key issue here is whether Bowden took advantage of all <u>available</u> remedies—a remedy is not available if the authority blocks access to it.

Bowden submitted grievances 510-2209-0047 and 510-2209-0048 on September 2, 2022. A grievance officer returned them because they were illegible. Bowden attached grievance '0047 as an exhibit to his Amended

Complaint, and it is indeed illegible. Neither party presented grievance '0048 to the Court, but Bowden does not dispute that it is illegible. Bowden's receipt of the returned grievances was delayed by his transfer to another prison.

Bowden received the returned grievances and rewrote and resubmitted them on September 26, 2022, and they were assigned numbers 119-220-0463 and 119-2209-0464. An official returned grievance '0463 because it included multiple issues in violation of FDOC rules. Bowden objects because the response did not include instructions on how to correct the grievance, but the Court finds the reason given for the return—"this grievance is being returned for having multiple issues"—self-explanatory. (Doc. 52-1 at 3).

Grievance '0464 complained about the confiscation and loss of Bowden's property. It was returned "due to time frames." (Doc. 52-1 at 5). Bowden takes issue with this return because it was a resubmission of the timely but illegible '0048 grievance, and Bowden submitted it the same day he received the returned '0048. Bowden has a point here. Informal grievances—including refiled grievances—generally must be filed within 20 days of the incident grieved. Fla. Admin. Code 33-103.011(1) and 33-103.014(2). But the rules also state that extensions to the time periods "shall be granted" when filing within the time period was not "feasible." Fla. Admin. Code 33-103.011(2). It was not feasible for Bowden to refile the grievance within 20 days of the incident

7

because he did not know the initial grievances were returned until after the deadline passed.

Bowden submitted grievances 119-2210-0241 and 119-2210-0285 on October 18, 2022. Both grievances complained about the return of grievance '0464 as untimely because Bowden submitted it immediately after receiving the returned grievance '0048. The grievance officer apparently accepted that explanation. He returned grievance '0241 and instructed Bowden to submit another grievance with a list of his missing property. Grievance '0285 was returned because it was duplicative of grievance '0241. The officer's response to grievance '0241 implicitly granted Bowden an extension of time to grieve the underlying issue (the loss of his property) and gave him instructions on how to proceed. The grievance process thus remained available to Bowden, but he did not file a supplemented grievance as instructed.

### C. Conditions of confinement

To succeed on his Eighth Amendment conditions-of-confinement claim, Bowden must establish an objective component and a subjective component. Under the objective component, Bowden "must prove that the conditions are sufficiently serious to violate the Eighth Amendment: that is, he must show that 'extreme' conditions created an unreasonable risk—one that society chooses not to tolerate—of serious damages to the detainee's future health or safety." *Ellis v. Pierce Cty., Ga.*, 415 F. App'x 215, 217 (11th Cir. 2011) (cleaned

up). Under the subjective component, Bowden must show deliberate indifference, which has three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (internal quotations and citation omitted). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Saunders v. Sheriff of Brevard Cty.*, 735 F. App'x 559, 564 (11th Cir. 2018) (internal quotation and citation omitted).

Bowden claims he was placed on property restriction for 72 hours and management meals for seven days. While on property restriction, Bowden was deprived of hygiene items and had to sleep on the floor. He had trouble sleeping due to insects, rats, and lack of warmth. Bowden also alleges he was deprived of food for seven days while on management meal, "receiving only an empty brown bag and a cup of whatever drink was served." (Doc. 52 at 4).

1. Exhaustion

Bowden's grievances mentioned that he was put on property restriction and management meals, but only in relation to a due-process claim. Bowden made no attempt to seek an administrative remedy for an Eighth Amendment violation. The grievances did not describe the discomfort, lack of sleep, and lack or food he now alleges. Seven days without food is a particularly egregious

9

claim. It could certainly satisfy the Eighth Amendment's "cruel and unusual" standard, but Bowden did not report this claim to prison officials. The Court finds it implausible Bowden would omit such an extreme deprivation from his grievances. But even accepting the allegation as true, Bowden failed to give FDOC officials a fair opportunity to investigate and address it. Bowden thus failed to exhaust his Eighth Amendment claim.

### 2. Pleading sufficiency

Apart from the food deprivation, Bowden's allegations would not support an Eighth Amendment claim even if Bowden exhausted them. The Eleventh Circuit has rejected Eighth Amendment claims based similar allegations. In *Turner v. Warden, GDCP*, the court found that an inmate left in a strip cell for ten days without clothing failed to establish an unreasonable risk of harm to his health or safety. 650 F. App'x 695, 701 (11th Cir. 2016). Turner's complaint that he was cold was not enough because "a prisoner's mere discomfort, without more, does not offend the Eighth Amendment." *Id.* (quoting *Chandler v. Crosby*, 379 F.3d 1278, 1295 (11th Cir. 2004). Likewise, in *O'Connor v. Kelley*, the Eleventh Circuit found no Eighth Amendment violation when an inmate felt uncomfortably cold while in strip-cell status. 644 F. App'x 928, 932 (11th Cir. 2016). As in *Turner* and *O'Connor*, Bowden's discomfort and difficulty sleeping while on property restriction is not an extreme deprivation that created a risk of serious harm.

Bowden also fails to plead any facts demonstrating deliberate indifference. Bowden alleges that he "was placed" on property restriction and management meals; he does not allege that any defendant participated in those decisions. Nor does Bowden allege he reported his discomfort and trouble sleeping to any defendant, or that any defendant was responsible for or aware of the deprivation of food. Subjective knowledge of a risk of harm is an essential element of deliberate indifference. Bowden's failure to allege facts showing that any Defendant knew of the alleged deprivations is another fatal deficiency of this claim.

**D. Due process**

Bowden next claims Defendants' failure to prepare a disciplinary report before taking his property and imposing property restriction and management meals violated his right to procedural due process. The Due Process Clause of the Fourteenth Amendment prohibits a State from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "A procedural due process claim consists of two elements: (I) deprivation by state action of a protected interest in life, liberty, or property, and (II) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023).

A valid conviction constitutionally deprives a prisoner of his liberty and subjects him to the rules of the prison system. *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Those rules can create liberty interests protected by the Due

11

Process Clause, but those interests are generally limited to freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.*

1. Exhaustion

Bowden complained about a lack of procedural due process in grievance '0463, but that grievance was returned because it included multiple issues. Bowden filed subsequent grievances, but they were about confiscation of Bowden's property, not due process. Bowden thus abandoned his due-process claim during the grievance process. This claim is unexhausted.

2. Pleading sufficiency

Even if Bowden had exhausted this claim, the Amended Complaint does not allege facts sufficient to support it. Bowden argues he had a protected liberty interest in access to clothing, bedding, and personal property because Fla. Admin. Code 33-601.800(10)(a)-(c) states that inmates in close management "shall" be provided each. But those rules give prison officials discretion to remove the items from an inmate's cell to prevent the inmate from harming himself or others or destroying property. What is more, the deprivation of access to property for 72 hours and seven days of management

12

meals do not constitute an "atypical and significant hardship on the inmate in relation to ordinary incidents of prison life." *Sandin*, 515 U.S. 484 (holding that 30 days of administrative confinement was not an atypical and significant hardship).

Because Bowden does not allege he was deprived of a protected liberty interest, he failed to state a due process claim. Bowden's claims that Defendants violated certain administrative rules by failing to prepare required forms are not cognizable. § 1983 claims must be based on violations of federal law—violations of state laws and regulations are not actionable.

### E. Conclusion

Bowden's failure to exhaust the administrative remedies available to him is fatal to his claims. And even if Bowden had exhausted those administrative remedies, he did not state a claim under either the Eighth or Fourteenth Amendments. The Court will thus dismiss this action without prejudice. The Court will close this case because Bowden already amended his complaint once, and because an amendment could not cure Bowden's failure to exhaust administrative remedies.

Accordingly, it is now

**ORDERED:**

Defendants' Motion to Dismiss Second [sic] Amended Complaint (Doc. 53) is **GRANTED**. Bowden's Amended Complaint (Doc. 52) is **DISMISSED**

**without prejudice**. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on February 6, 2024.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies: All Parties of Record